1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                                )
GALINA MEDVEDEVA,                            )        No. C14-7RSL
                                                                )
                              Plaintiff,              )
           v.                                                )        ORDER GRANTING IN PART
                                                                )        DEFENDANTS' MOTION FOR
CITY OF KIRKLAND, et al.,                     )        SUMMARY JUDGMENT
                                                                )
                              Defendants.          )
_____)

## I.  INTRODUCTION

This matter comes before the Court on "Defendants' Motion for Summary Judgment."
Dkt. # 20.  Defendants seek judgment as a matter of law on all of plaintiff's constitutional and
tort claims arising out of an entry and arrest at plaintiff's mother's apartment on September 24,
2011.  Having reviewed the memoranda, declarations, and exhibits submitted by the parties and
taking the evidence in the light most favorable to plaintiff, the Court grants in part and denies in
part defendants' motion as follows:[1]

## II.  BACKGROUND

Plaintiff served in the military from 2001 to 2007, during which time she was raped and
suffered foot injuries.  Medvedeva Decl. (Dkt. #27) ¶¶ 5–8.  She developed Post Traumatic

_____
[1] The Court also grants plaintiff's motion for leave to file an overlength response brief
(Dkt. #24), which defendants have not opposed.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

Stress Disorder ("PTSD") and problems with her left foot requiring multiple surgeries.  Id. ¶ 8.
On September 24, 2011, plaintiff was recovering from a third surgery on her left foot and staying
with her mother at 9821 NE 122nd Street, # 317, in Kirkland (Unit 317).  Sakk Decl. (Dkt. #28)
¶¶ 2, 6.  That afternoon, plaintiff's mother was at work and plaintiff was alone in the apartment.
Id. ¶¶ 7–8.  At around 2:30 p.m., the tenant living in Unit 217 knocked on the door of Unit 317
to inform plaintiff or plaintiff's mother that water was coming through the ceiling of Unit 217.
Medvedeva Decl. (Dkt. #27) ¶ 11.  The tenant of Unit 217 thought that Unit 317 was the source
of the water and wanted to check Unit 317.  Plaintiff did not allow her to enter.  Id.  Plaintiff
then went to the bathroom and saw that water was overflowing from the bathroom sink and onto
the floor.  Id. ¶ 12.  The water had been running "maybe a half an hour" before plaintiff's
interaction with the tenant from Unit 217.  Parker Decl. (Dkt. #26) Ex. B, at 11:5.  Plaintiff
"threw a couple blankets on the floor and soaked up the water."  Id. at 11:7–8.

In the meantime, the tenant from Unit 217 called 911 to report the water flowing through
her ceiling.  Firefighters and police officers employed by the City of Kirkland responded to the
call.  Firefighters inspected Unit 217 and saw that there was "water on the floor surrounding the
toilet, the area rug was soaked and there was water dripping from several locations on the
ceiling, overhead light, and exhaust fan.  These conditions existed even after the resident [in Unit
217] had mopped and used towels to clean up."  Hani Decl. (Dkt. #22) ¶ 7.

Defendants arrived and knocked on the door to Unit 317 and asked to come inside to
investigate the flooding.  Id. ¶ 8; Medvedeva Decl. (Dkt. #27) ¶ 13.  Plaintiff did not let them in,
informing them that she did not feel comfortable with them entering the apartment due to her
PTSD.  Medvedeva Decl. (Dkt. #27) ¶ 13.  She told them to wait for her mother to return home,
which would be in about fifteen or twenty minutes.  Id.  Defendants continued to ask plaintiff to
let them in, but she refused.  Id. ¶ 14.  After being on the scene for approximately forty-five
minutes, one of the firefighters became "concerned that water was continuing to migrate into a
common wall that was known to contain electrical junctions and circuitry."  Hani Decl. (Dkt.

#22) ¶¶ 7, 9.  He informed defendants that the situation posed a serious risk to the tenants in the building because of potential fire or ceiling collapse.  Id.  Due to these fears, the firefighters and police officers used a master key to gain entry into the apartment.  Id. ¶¶ 9–10.

Once defendants and firefighters were inside the apartment, plaintiff ran to the bathroom, the source of the flooding water.[2]  Medvedeva Decl. (Dkt. #27) ¶ 14.  Officer Wood opened the bathroom door and then grabbed and twisted plaintiff's arm, causing her pain.  Id. ¶ 16.  Next, he pushed plaintiff, causing her to fall into the bathtub.  Id.  Plaintiff was subsequently "dragged out of the bathroom" and placed face-down on a bed.  At that point, one of the officers "had his knee or torso on [her] mid and lower back."  Id. ¶ 19.

Once plaintiff's mother arrived, she attempted to talk with defendants about plaintiff's mental and physical conditions.  Corporal McGuire told plaintiff's mother that "Galina has to learn a lesson in how to behave."  Sakk Decl. (Dkt. #28) ¶ 12.  Plaintiff states that "[o]ne of the officers commented that they needed to teach me a lesson."  Medvedeva Decl. (Dkt. #27) ¶ 21.  The officers subsequently decided to arrest plaintiff for obstruction.  Parker Decl. (Dkt. #26) Ex. F.  The officers removed plaintiff from the apartment by taking her down three flights of stairs, with plaintiff's injured left foot "hitting each step" on the way down.  Medvedeva Decl. (Dkt. #27) ¶ 22.  Plaintiff was placed in a patrol car and brought to Kirkland City Jail.  Id. ¶ 24.  From there, she was taken to Snohomish County Jail.  Id. ¶ 25.

The firefighters inspected the bathroom in Unit 317 and saw "slight water on the floor and water splashed all around the sink on the countertop."  Hani Decl. (Dkt. #22) ¶ 11.  They then inspected Unit 217 and found that the water had stopped coming through the ceiling.  Id.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact

_____

[2] From this point on, the parties present differing accounts of the event.  The Court sets forth the facts taken in the light most favorable to plaintiff's version.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>L.A. Printex Indus., Inc. v. Aeropostale, Inc.</u>, 676 F.3d 841, 846 (9th Cir. 2012).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324.  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense.  <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

## IV.  ANALYSIS

### A.  Fourth Amendment Claims Under Section 1983

Plaintiff asserts that the officers unlawfully entered her mother's apartment without a warrant, unlawfully seized and arrested her, and used excessive force in violation of the Fourth Amendment to the United States Constitution.  Because the officers had a lawful reason for their entry, and carried out their entry in a reasonable manner, the Court grants summary judgment to defendants on plaintiff's unlawful entry and unlawful seizure and arrest claims.  However, because there are genuine issues of material fact, this Court denies summary judgment on plaintiff's excessive force claim.

### 1.  Unlawful Entry

"Searches and seizures inside a home without a warrant are presumptively unreasonable,

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4

but that presumption is not irrebuttable, and a warrantless search or seizure is permitted to render emergency aid or address exigent circumstances." <u>Sheehan v. City & Cnty. of San Francisco</u>, 743 F.3d 1211, 1221 (9th Cir. 2014), <u>cert. granted</u>, __ U.S. __, 135 S. Ct. 702 (2014). "The emergency aid exception applies when: '(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need.'" <u>Id.</u> (quoting <u>United States v. Snipe</u>, 515 F.3d 947, 952 (9th Cir. 2008)).

First, defendants had an "objectively reasonable basis for concluding that there was an immediate need to protect" all of the occupants of the apartment building, including plaintiff, from the very serious threat to safety that results from water leaks or flooding in apartment buildings.  The firefighters had seen a significant amount of water flowing through the ceiling of Unit 217.  Hani Decl. (Dkt. #22) ¶ 7.  One of the firefighters expressed a concern that water was going through a wall "that was known to contain electrical junctions and circuitry."  <u>Id.</u> ¶ 9.  He was concerned that the water might start a fire, create an electrocution hazard, or cause portions of the structure to collapse.  <u>Id.</u> ¶¶ 3, 7.  Once the firefighters saw the amount of water in Unit 217, they needed to stop the problem at its source in Unit 317.  <u>Id.</u> ¶ 7.  As time passed, during which plaintiff refused to let defendants and firefighters enter the unit, the need to examine the problem increased.  Due to the firefighters' observations in Unit 217 and fears that this flooding could cause fire and ceiling collapse, defendants' basis for entering the apartment was reasonable.

Second, the officers carried out the search in a reasonable manner based on the circumstances.  They knocked on the door and identified themselves.  They informed plaintiff that they were there only to address the water problem.  <u>Id.</u> ¶ 8.  They used the master key to enter the apartment only after it was clear that plaintiff would not let them in and the situation was becoming increasingly dangerous.  After entering, the officers and firefighters "quickly

observed that the kitchen area was dry and not the source of the flooding." Id. ¶ 10.  The only

other source of the flooding could have been the bathroom, which made sense because the

flooding was in the bathroom of Unit 217 and the two units likely had the same floor plan.  Id.

¶ 8.  Defendants thus entered the bathroom in their search for the flooding, where they

encountered plaintiff.  Their entry into the apartment was conducted in a reasonable manner

because it was aimed solely at identifying and addressing the source of the flooding.  Therefore,

the Court grants summary judgment to defendants on plaintiff's claim for unlawful entry.

### 2.  Unlawful Seizure and Arrest

"It is well established that 'an arrest without probable cause violates the Fourth

Amendment and gives rise to a claim for damages under § 1983.'"  Rosenbaum v. Washoe

Cnty., 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting Borunda v. Richmond, 885 F.2d 1384, 1391

(9th Cir. 1988).  "Probable cause to arrest exists when officers have knowledge or reasonably

trustworthy information sufficient to lead a person of reasonable caution to believe that an

offense has been or is being committed by the person being arrested."  United States v. Lopez,

482 F.3d 1067, 1072 (9th Cir. 2007).  "[P]robable cause supports an arrest so long as the

arresting officers had probable cause to arrest the suspect for any criminal offense . . . ."  Torres

v. City of Los Angeles, 548 F.3d 1197, 1207 (9th Cir. 2008) (citing Devenpeck v. Alford, 543

U.S. 146, 153–55 (2004)).

Defendants assert that there was probable cause to arrest plaintiff for obstruction.[3]  RCW

9A.76.020 provides that "[a] person is guilty of obstructing a law enforcement officer if the

person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his

or her official powers or duties."  In discussing the statute, the Ninth Circuit has stated that

"[t]he crime of obstructing an officer has four essential elements: (1) an action or inaction that

---

[3] Defendants also contend that there was probable cause to arrest plaintiff for assault in the third
degree under RCW 9A.36.031.  Motion (Dkt. #20) at 15.  Defendants assert that plaintiff kicked one of
the officers, id., which plaintiff denies.  Medvedeva Decl.(Dkt. #27) at ¶ 19.  Thus, the facts taken in the
light most favorable to plaintiff do not support defendants' contention.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 6

hinders, delays, or obstructs the officers; (2) while the officers are in the midst of their official duties; (3) the defendant knows the officers are discharging a public duty; (4) the action or inaction is done knowingly." Lassiter v. City of Bremerton, 556 F.3d 1049, 1053 (9th Cir. 2009). The statute applies to the obstruction of an officer's "community caretaking functions." State v. Steen, 164 Wn. App. 789, 802 (2011).

Viewing the facts in the light most favorable to plaintiff, defendants had probable cause to arrest plaintiff for obstruction. Plaintiff delayed and obstructed defendants' and firefighters' attempts to address the flooding problem. Second, defendants needed to enter the apartment as part of their official duties. They were called to the scene to address an emergency, a duty that fell under their community caretaking responsibilities. Third, plaintiff knew they were officers attempting to discharge their duties because they identified themselves and stated their purpose. She briefly opened the door and realized they were police officers. Parker Decl. (Dkt. #26) Ex. B, at 17:11. Fourth, plaintiff knowingly refused entry to defendants. Accordingly, the Court grants summary judgment to the City of Kirkland on the unlawful seizure and arrest claims.

### 3. Excessive Force

Ninth Circuit courts "analyze all claims of excessive force that arise during or before arrest under the Fourth Amendment's reasonableness standard." Coles v. Eagle, 704 F.3d 624, 627 (9th Cir. 2012). A reasonableness inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). After considering the "nature and quality of the intrusion," a court must "consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011). These factors are not exclusive, and courts are "free to consider issues outside the three enumerated above when additional facts

are necessary to account for the totality of circumstances in a given case." Id. "We have often observed that '[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" Coles, 704 F.3d at 627–28 (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).

Plaintiff alleges a substantial intrusion. She states that defendants twisted and hyperextended her arm, pushed her into the bathtub, and dragged her out of the bathroom. Medvedeva Decl. (Dkt. #27) ¶¶ 16–17. She also states that they put pressure on her back to the extent that she could not breathe. Id. ¶ 19. After notifying defendants that she had recently undergone surgery on her left foot, defendants "dragged [her] out of the third story apartment with [her] injured foot sliding along and bumping against the ground." Id. ¶ 22.

Viewed in the light most favorable to plaintiff, the crime at issue was obstruction, a misdemeanor. See Section III.A.2. In addition, plaintiff was unarmed, recovering from surgery, and slight in stature. Medvedeva Decl. (Dkt. #27) ¶ 18–19. Third, she did not resist arrest, but instead screamed in pain and told the officers she could not breathe. Accordingly, an analysis of the reasonableness factors reveals that plaintiff has placed facts in the record to support her excessive force claim.

The Court also finds that defendants are not entitled to qualified immunity on this claim. An officer will not be entitled to qualified immunity if the law is "clearly established such that it would 'be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Rosenbaum, 663 F.3d at 1078–79 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). It was clearly established at the time of the incident that an officer's use of force must be reasonable under the circumstances. Coles, 704 F.3d at 627. Taking the evidence in the light most favorable to plaintiff, no reasonable officer could have believed that defendants' conduct was lawful. Therefore, defendants are not entitled to judgment as a matter of law on the excessive force claim.

*ORDER GRANTING IN PART DEFENDANTS'*
*MOTION FOR SUMMARY JUDGMENT - 8*

### B.  Municipal Liability Under Section 1983

Plaintiff claims that defendant City of Kirkland is liable to plaintiff for failing to adequately train its officers in how to deal with individuals with mental disabilities.  Because plaintiff has failed to put forth evidence that this amounted to a policy or practice, the Court awards summary judgment to defendants on the municipal liability claim.

"[A]s to a municipality, 'the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" Flores v. Cnty. of Los Angeles, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  A plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim." Id. at 1158 (quoting Price v. Sery, 513 F.3d 962, 973 (9th Cir. 2008)).  "A 'pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,' though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'" Id. at 1159 (quoting Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350, 1360, 1361 (2011).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 131 S. Ct. at 1360.

In this case, plaintiff alleges that the city's failure to have its officers "undergo mandatory Crisis Intervention Training or Mental illness training" constitutes a failure to train.  Response (Dkt. #25) at 22–23.  Plaintiff contends that, with this training, defendants "would have deescalated the situation with Medvedeva and would not have subjected her to rough treatment and arrested her." Id. at 23.  However, plaintiff has not attempted to show a pattern of similar violations by untrained employees.

Additionally, plaintiff's claim does not fall within the "narrow range of circumstances [in

which] a pattern of similar violations might not be necessary to show deliberate indifference."
Connick, 131 S.Ct at 1361.  This "narrow range" of circumstances is reserved for scenarios in
which "the unconstitutional consequences of failing to train [are] . . . patently obvious."  Id.  Put
another way, this type of circumstance was meant to address municipal employees put into
service with an "utter lack of ability to cope with constitutional situations."  Id. at 1363.  The
consequences of neglecting to offer the two types of training referenced by plaintiff are not
"patently obvious."  Further, the lack of these two programs did not create officers with an "utter
lack of ability to cope" with situations like the event in this case.  In fact, the City of Kirkland's
police officers, including defendants, received training in various areas relevant to crisis
intervention and mental illness.  For example, defendants received training in "Understanding
Anger," "Defensive Tactics and Patrol Scenarios," "Takedown and Handcuff Techniques,"
"Verbal Judo and De-Escalation Techniques," and "Development Disabilities and Mental
Illness."  Estes Decl. (Dkt. #21) Ex. F, at KIRK 002013–002018.  For these reasons, the Court
grants summary judgment for the City of Kirkland on plaintiff's municipal liability claim.

### C.  Malicious Prosecution Under Section 1983 and Washington State Law

Plaintiff also alleges that defendants are liable for malicious prosecution.  Because the
arrest in this case was made with probable cause, this Court grants defendants' motion to dismiss
this claim.

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show
that the defendants prosecuted [him] with malice and without probable cause, and that they did
so for the purpose of denying [him] equal protection or another specific constitutional right.'"
Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting Freeman v. City of
Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)).  In order to bring a malicious prosecution claim
under Washington state law, a plaintiff must prove: "(1) that the prosecution claimed to have
been malicious was instituted or continued by the defendant; (2) that there was want of probable
cause for the institution or continuation of the prosecution; (3) that the proceedings were

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution." Clark v. Baines, 150 Wn.2d 905, 911 (2004) (internal quotation marks and citations omitted).  Viewing the facts in the light most favorable to plaintiff, defendants had probable cause to arrest plaintiff for obstruction. See Section III.A.2.  Therefore, the Court grants summary judgment to defendants on both malicious prosecution claims.

## D.  First Amendment Claim

Plaintiff claims her First Amendment rights were violated because defendants' decision to book and jail her was based on a retaliatory motive.  Plaintiff bases this claim on the fact that while she was restrained in her mother's apartment, Corporal McGuire stated that "Galina has to learn a lesson in how to behave." Sakk Decl. (Dkt. #28) ¶¶ 11, 12.  Subsequently, plaintiff was removed from the apartment and taken to jail for obstruction.  While there may be genuine issues of fact as to the arresting officer's motives in executing a full custodial arrest, plaintiff's claim for a retaliatory arrest in violation of the First Amendment fails because she has not demonstrated that she engaged in speech protected under the First Amendment.

The first issue in a First Amendment retaliation claim on summary judgment is whether the facts, taken in the light most favorable to the plaintiff, show a violation of the plaintiff's First Amendment rights.  See, e.g., Ford v. City of Yakima, 706 F.3d 1188, 1192 (9th Cir. 2013).  Thus, in order to establish a claim of retaliation in violation of the First Amendment, the plaintiff must first show that she engaged in protected "speech."  A plaintiff must then show that an officer or officers' "conduct would chill a person of ordinary firmness from future First Amendment activity." Id. at 1193.  Finally, a plaintiff must also present evidence that will allow her "to prove that the . . . desire to chill [her] speech was a but-for cause of [the] allegedly unlawful conduct." Id.

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987); Mackinney

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 11

v. Nielsen, 69 F.3d 1002, 1007 (9th Cir. 1995).  In fact, the freedom of individuals to verbally express opposition to police action without risk of arrest is a "principal characteristic" of a free state.  Hill, 482 U.S. at 462–63.  In City of Houston, Texas v. Hill, the Supreme Court invalidated a city ordinance that made it unlawful for an individual to verbally "interrupt" a police officer's lawful investigation, as the inclusion of such verbal comments swept too broadly and thereby prohibited speech protected under the First Amendment.  482 U.S. at 462–63, 466–67.  The Court determined that the ordinance was "not narrowly tailored to prohibit only disorderly conduct or fighting words" and instead burdened an individual's right to verbally oppose police action, which constitutes First Amendment protected speech.  Id. at 465–66.  The Court was careful to note, however, that its decision would "not leave municipalities powerless to punish physical obstruction of police action." Hill, 482 U.S. at 462 n.11.

Ninth Circuit case law recognizes a distinction between verbal opposition to police conduct, protected under the First Amendment, and conduct that physically obstructs police officer action, which is not protected as "speech."  In Young v. City of Los Angeles, 655 F.3d 1156 (9th Cir. 2011), plaintiff was arrested for refusing to comply with a law enforcement officer's orders requesting that he reenter his vehicle during a traffic stop.  Id. at 1170.  Plaintiff challenged his arrest on the grounds that his repeated statements of refusing to comply with the officer's orders constituted free speech, and that the arrest therefore violated his First Amendment rights.  The Ninth Circuit held that plaintiff's arrest did not violate his right to free speech under the First Amendment because plaintiff's complete refusal to obey the law enforcement officer's lawful command was not an act of speech or expression protected by the First Amendment.  Id.

Here, plaintiff was arrested for her complete refusal to comply with law enforcement's lawful request to enter her mother's apartment.  The crime of arrest, obstruction of justice, makes it unlawful for an individual to engage in conduct that "willfully hinders, delays, or obstructs" a law enforcement officer in the discharge of his official duties.  RCW 9A.76.020.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

While plaintiff was free to verbally criticize the police officers as they carried out their official duties, plaintiff did not have a First Amendment right to engage in conduct that physically obstructed law enforcement from carrying out their lawful investigation of the water leak.

Furthermore, plaintiff has not presented the Court with any evidence that her conduct in refusing to open the door was a form of expression or protest. Rather, she admits in her declaration that the she closed the door on the officers because she began to feel "panicked" and refused to let them in despite the officers' repeated requests because she was "terrified." Medvedeva Decl. (Dkt. #27) at ¶¶ 13, 14. Plaintiff's refusal to open the door in response to numerous lawful requests by the law enforcement officers in this case was not an "act of expression protected by the First Amendment, but rather . . . [a] simple failure to obey a police officer's lawful instructions." Navarro v. Sterkel, 2012 WL 3249487, at *8 (N.D. Cal. Aug. 7, 2012) (quoting Young, 655 F.3d at 1170) (rejecting plaintiff's First Amendment claims because plaintiff's refusal to obey the police officer's lawful orders during a traffic stop was due to fear and thus did not constitute expressive conduct). Therefore, defendants are entitled to judgment as a matter of law on plaintiff's First Amendment claim.

### E. ADA Claims

Title II of the ADA applies to arrests. Sheehan, 743 F.3d at 1232. There are "at least two types of Title II claims applicable to arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." Id. "[E]xigent circumstances inform the reasonableness analysis under the ADA." Id.

The first type of claim under Title II does not apply here. The officers did not make a wrongful arrest. See Section III.A.2. The second type of Title II claim, however, does apply

here. In the course of arresting plaintiff, there is a genuine issue of material fact about whether the officers failed to make reasonable accommodations for her after she was removed from the bathroom.

The Court finds that <u>Sheehan</u> controls here. In <u>Sheehan</u>, police officers responded to a situation in which a mentally ill resident of a group home told a social worker that she had a knife and threatened him. <u>Sheehan</u>, 743 F.3d at 1217. The officers knocked on her door, announced themselves, and used a building key to open the door. <u>Id.</u> at 1218. The woman walked in an aggressive manner towards the officers with a knife and told them to leave her room. <u>Id.</u> at 1218–19. The officers left the room and closed the door. The officers then re-entered her room with their service weapons drawn. <u>Id.</u> at 1219. The woman was near the threshold, still holding the knife, and the officers pepper sprayed and shot her multiple times. <u>Id.</u> at 1219–20. The Ninth Circuit found that the officers should have provided the woman with a reasonable accommodation during the second entry into her room because the officers knew that Sheehan had a disability, and because "[a] reasonable jury . . . could find that the situation had been defused sufficiently, following the initial retreat from Sheehan's room, to afford the officers an opportunity to wait for backup and to employ less confrontational tactics." <u>Id.</u> at 1233.

As in <u>Sheehan</u>, the situation had been defused once plaintiff was removed from the bathroom, the source of the flooding. Furthermore, once plaintiff's mother arrived at the scene, she confirmed with the officers that plaintiff suffered from PTSD, and that she had recently undergone surgery on her foot. Sakk Decl. (Dkt. #28) at ¶ 10. Taking the evidence in the light most favorable to plaintiff, the officers at this time had knowledge of plaintiff's disability. Once the officer had knowledge of plaintiff's disability, and the exigency of the flooding was dispelled, a reasonable juror could find that defendants could have taken additional time to accommodate plaintiff's PTSD during the process of detaining and booking her. For these reasons, "and because the reasonableness of an accommodation is ordinarily a question of fact,"

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 14

Sheehan, 743 F.3d at 1233, defendants are not entitled to summary judgment on plaintiff's ADA claim against the City of Kirkland.

### F. State Law Claims

#### 1. Assault and Battery

"Generally, a police officer making an arrest is justified in using sufficient force to subdue a prisoner, however he becomes a tortfeasor and is liable as such for assault and battery if unnecessary violence or excessive force is used in accomplishing the arrest." Boyles v. City of Kennewick, 62 Wn. App. 174, 176 (1991). Following the Court's excessive force analysis above, the Court cannot grant summary judgment on this claim. Viewed in the light most favorable to plaintiff, the officers used more force than necessary to accomplish the arrest.

#### 2. False Arrest and False Imprisonment

Under Washington law, "probable cause is a complete defense to an action for false arrest and imprisonment." Hanson v. City of Snohomish, 121 Wn.2d 552, 563 (1993). As discussed above, defendants had probable cause to arrest plaintiff for obstruction. See Section III.A.2. Accordingly, the Court grants summary judgment to defendants on plaintiff's false arrest and false imprisonment claims.

#### 3. Negligence

Plaintiff has not opposed defendants' motion regarding the state law negligence claim. Consequently, the Court grants summary judgment on this claim.

#### 4. Trespass

Under Washington law, "[a] person is liable for trespass if he or she intentionally (1) enters or causes another person or a thing to enter land in the possession of another or (2) remains on the land or (3) fails to remove from the land a thing that he or she is under a duty to remove." Brutsche v. City of Kent, 164 Wn.2d 664, 673 (2008). Liability for trespass arises only if an officer acts "in an unreasonable manner" and causes harm. Id. at 674. In this case, viewing the evidence in the light most favorable to plaintiff, the officers did not enter the

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 15

apartment "in an unreasonable manner."  They were responding to an emergency, and thus acted reasonably in entering the apartment and searching for the source of the flooding.  See Section III.A.1.  Therefore, the Court grants summary judgment to defendants on this claim.

### 5.  Intentional Infliction of Emotional Distress (Outrage)

The tort of outrage, also known as intentional infliction of emotional distress, "requires proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  Kloepfel v. Bokor, 149 Wn.2d 192, 195 (2003).  "Any claim of outrage must be predicated on behavior so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Strong v. Terrell, 147 Wn. App. 376, 385 (2008) (internal quotation marks and citations omitted).

"The elements of outrage generally are factual questions for the jury."  Sutton v. Tacoma Sch. Dist. No. 10, 180 Wn. App. 859, 869 (2014).  "However, a trial court faced with a summary judgment motion must make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury."  Id. (internal quotation marks and citations omitted).  A court may consider several factors, including:

> (1) the position the defendant occupied; (2) whether the plaintiff was particularly susceptible to emotional distress and the defendant was aware of the susceptibility; (3) whether the defendant's conduct was privileged; (4) whether the degree of emotional distress was severe as opposed to merely annoying, inconvenient or embarrassing; and (5) whether the defendant was  aware of a high probability that his or her conduct would cause severe emotional distress, and consciously disregarded that probability.

Id. at 870.  Whether conduct qualifies as "extreme and outrageous" is a question for the factfinder to determine.  Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1100 (9th Cir. 2013).

Viewing the facts in the light most favorable to plaintiff, defendants were in a position of

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 16

authority over her and were aware of her condition.  Further, plaintiff has placed facts on the record indicating that she suffered distress as a result of defendants' actions, including suffering severe pain and emotional trauma.  Medvedeva Decl. (Dkt. #27) ¶¶ 16–20.  Finally, plaintiff has supplied evidence that defendants consciously disregarded the high probability that their conduct would cause severe emotional distress when they knew she had PTSD, was a victim of sexual violence, and had recently had foot surgery.  Id. ¶¶ 13, 14, 19.  With this knowledge, they threw her on a bed, applied pressure to her back that impacted her ability to breathe, and took her down the stairs in a way that caused her injured foot to hit each step.  Id. ¶¶ 19, 22.  Thus, four of the five factors that courts evaluate when considering an outrage claim are satisfied in plaintiff's favor at this stage of the proceedings.  Consequently, defendants' motion as to this claim is denied.

### 6.  Respondeat Superior

Plaintiff claims that the City of Kirkland is liable under respondeat superior for all of the state law claims alleged.  Complaint (Dkt. #1) ¶¶ 100–01.  All of the state law claims against the individual officers are dismissed except for assault and battery and intentional infliction of emotional distress.  Consequently, there is no respondeat superior liability with regard to those dismissed claims.

"Our case law makes clear that, once an employee's underlying tort is established, the employer will be held vicariously liable if 'the employee was acting within the scope of his employment.'"  Robel v. Roundup Corp., 148 Wn.2d 35, 52–53 (2002) (quoting Dickinson v. Edwards, 105 Wn.2d 457, 469 (1986).  "An employer can defeat a claim of vicarious liability by showing that the employee's conduct was (1) "intentional or criminal" and (2) "outside the scope of employment."  Id. (quoting Niece v. Elmview Group Home, 131 Wn.2d 39, 56 (1997)).  There has been no dispute that the officers were acting within the scope of their employment during the entirety of the incident.  Thus, plaintiff's respondeat superior claims can proceed against the City for assault and battery and intentional infliction of emotional distress.

## IV. CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. #20) is GRANTED in part.  Summary judgment is GRANTED on the following claims: unlawful entry under the Fourth Amendment, unlawful seizure and arrest under the Fourth Amendment, municipal liability under § 1983, malicious prosecution under both § 1983 and Washington state law, retaliatory arrest in violation of the First Amendment, false arrest and false imprisonment, trespass, and negligence.  Summary judgment is DENIED with regard to the following claims: excessive force under the Fourth Amendment, failure to accommodate under the ADA, assault and battery, intentional infliction of emotional distress, and respondeat superior for assault and battery and intentional infliction of emotional distress.

Dated this 22nd day of April, 2015.


MRS Lasnik
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 18